UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD HARRIS,

    Plaintiff,

v.                                                      Case No. 3:24-cv-247-TJC-LLL

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, an inmate of the Florida penal system who is proceeding in forma pauperis, initiated this case by filing a Civil Rights Complaint under 42 U.S.C. § 1983, alleging a series of allegations involving events that occurred at Suwannee Correctional Institution (Suwannee C.I.) and Hamilton Correctional Institution Annex (Hamilton C.I.) on various dates in February 2024. Doc. 1. Finding Plaintiff's claims to be too wide-ranging to be the subject of a single complaint, the Court directed Plaintiff to file an amended complaint. See Doc. 5. In doing so, the Court advised Plaintiff that in the amended complaint, "he must set forth only related claims," limit his claims "to a single set of circumstances," and "focus his allegations on showing how each named defendant is casually connected to his alleged injuries." Id. at 2. The Court also explained that "the claims unrelated to the events [P]laintiff chooses to pursue

in this action may be pursued in a separate civil rights case." Id. And it cautioned Plaintiff that "[f]ailure to comply may result in dismissal of this case without further notice." Id. at 6.

Before the Court is Plaintiff's Amended Complaint. See Doc. 8. He names five Defendants – the Florida Department of Corrections (FDOC); Warden Allen, Warden of Hamilton C.I.; Warden Lane, Warden of Suwannee C.I.; Charles Jefferson, Classification Supervisor at Suwannee C.I.; and Sergeant Suarez. Id. at 2-4. The allegations in the Amended Complaint involve a series of events that occurred between February 2023 and February 2024. According to Plaintiff, he has relied on a wheelchair for mobility since May 2022 when an officer assault left him with serious injuries. Id. at 7. Plaintiff asserts that considering his Americans with Disabilities Act (ADA) status, he now requires several medical passes, therapeutic devices, and housing in an ADA cell. Id.

Plaintiff alleges that on February 6, 2023, while housed at Suwannee C.I., Major Shelly Glass and Defendant Jefferson conducted Plaintiff's close management review following the issuance of two false disciplinary reports written by non-parties in retaliation for Plaintiff filing a lawsuit against Suwannee C.I. staff. Id. at 6. At the conclusion of the review, Glass and Jefferson warned Plaintiff to stop filing lawsuits or he was "going to receive added charges." Id. On February 8, 2023, Plaintiff was placed in a twenty-four-

2

hour lock down, during which he was subjected to staff retaliation, which led to Plaintiff filing case no. 3:23-cv-895-WWB-PDB. Id. According to Plaintiff, Jefferson was designated as one of the two individuals to assist in serving the defendants in that case, and while Jefferson was making his rounds, he stopped at Plaintiff's cell and stated, "you couldn't just take good advice, you'll have to learn the hard way." Id. at 6-7.

Plaintiff alleges that after he successfully completed one year on close management without another disciplinary report, officials were supposed to place him back in general population. Id. at 7. However, on February 9, 2024, "in retaliation for filing lawsuits against staff at Suwannee [C.I.], and as intimidation to make Plaintiff cease his litigation against staff, Plaintiff was sent to Hamilton C.I. Annex, which is a non-ADA institution." Id. at 7. When he arrived at Hamilton C.I., Plaintiff asked Defendant Suarez to escort him to an ADA-approved shower, but Suarez refused, advising Plaintiff that "the only ADA shower on this compound is in the infirmary, [and] I'm not taking you to the infirmary." Id. Plaintiff then notified Defendant Allen about his ADA-status and Suarez's refusal, to which Allen advised Plaintiff that he would investigate the situation. Id.

According to Plaintiff, the dorm in which he was housed at Hamilton C.I. was also infested with rats. Id. at 8. Plaintiff asserts that on February 12, 2024,

3

he advised Suarez of the rat infestation, but Suarez simply responded that "the rats were [here] before you got here, and will be here when you leave." Id. Plaintiff asserts he continued to notify Suarez about the rats and his need for an ADA shower, but Suarez ignored Plaintiff's complaints. Id. Plaintiff also asserts that on February 15, 2024, and February 20, 2024, he advised Major Carter about the rat infestation and Suarez's refusal to escort him to the ADA shower. Id. According to Plaintiff, Carter "made a phone call, asking the person on the other end 'why is [Plaintiff] here if he's ADA?' [But] still nothing changed." Id. at 8-9.

Plaintiff maintains that while he was housed at Hamilton C.I., staff violated prison policy and refused to house him in an ADA accessible cell or allow him access to his wheelchair. Id. at 9. According to Plaintiff, placing him in general population and making him share a cell with other inmates exposed Plaintiff's aluminum walker to theft and forced him to walk long distances, which led to an increase in discomfort, chest pain, and elevated blood pressure. Id. at 9. Plaintiff asserts he ultimately went to medical because of his high blood pressure, which resulted in officials transporting Plaintiff to Lake City Hospital for treatment on February 23, 2024. Id.

Upon his release from the hospital and return to Hamilton C.I. on February 24, 2024, Nurse Whetmore examined Plaintiff and advised him that

4

his blood pressure was elevated again due to pain from being transported back to the prison in a non-ADA van. Id. at 9-10. When Plaintiff asked why he was being housed at a non-ADA facility, Whetmore said she did not know but explained he should not have been transferred to Hamilton C.I. because of his ADA status. Id. at 10. Whetmore then reviewed Plaintiff's electronic passes and noted that someone "erased" Plaintiff's wheelchair pass from the system and advised that it was probably erased because Plaintiff had filed lawsuits against correctional staff. Id. at 10. Later that day, Plaintiff was again called to medical for a follow-up and a nurse placed him in confinement for "1-6 lewd acts" to threaten and intimidate Plaintiff. Id. at 11.

On February 26, 2024, a doctor examined Plaintiff, renewed his wheelchair pass, and expressed that he was "baffled" that Plaintiff was transferred to Hamilton C.I. Id. at 11. On February 27, 2024, officials transferred Plaintiff back to Suwannee C.I. Id. According to Plaintiff, if "Jefferson, Lane, and Allen's intentions were not nefarious," they should have sent him to another ADA facility rather than Suwannee C.I. Id.

In March 2024, weeks after being transferred back to Suwannee C.I., Plaintiff was sexually assaulted by an unnamed staff member and other unnamed staff attempted to cover up the assault. Id. at 12. According to

5

Plaintiff, when he attempted to report the sexual abuse, officials refused to act and instead Plaintiff was issued a falsified disciplinary report. Id. at 12.

Plaintiff emphasizes "that in retaliation for his litigation against staff at Suwannee C.I., he was transferred to a non-ADA, neighboring institution [(Hamilton C.I.)], to intentionally be subject to more deplorable conditions of confinement." Id. He raises the following claims: (1) FDOC, Allen, and Lane failed "to take actions to curb the retaliation and continued deprivation of Plaintiff's constitutional rights after being notified of the unconstitutional actions," violating the First, Eighth, and Fourteenth Amendments; (2) Jefferson engaged in "retaliatory actions and transfer of Plaintiff to a non-ADA prison," violating the First, Eighth, and Fourteenth Amendments as well as the ADA; and (3) Suarez's "denial of Plaintiff's shower for weeks and ignoring Plaintiff's pleas to move from rat infested unit for weeks violated [the] Eighth and Fourteenth Amendments and the ADA." Id. at 14. As relief, Plaintiff requests monetary damages and injunctive relief. Id.

**I.  Failure to Comply**

A district court has discretion, under Federal Rule of Civil Procedure 41(b), to dismiss a pro se plaintiff's action for his failure to comply with court rules or a court order. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)

6

("[D]ismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

> Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Rule 41(b) provides the district court "discretion to impose sanctions on a party who fails to adhere to court rules." Zocaras,[1] 465 F.3d at 483. A district court may sua sponte dismiss a case under Rule 41(b). Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir.2005).

Powell v. Harris, 628 F. App'x 679, 680 (11th Cir. 2015) (holding the district court did not abuse its discretion dismissing the case without prejudice for the plaintiff's noncompliance with the court's instructions to file a proper complaint); see also Duong Thanh Ho v. Costello, 757 F. App'x 912, 914-15 (11th Cir. 2018) (affirming the district court's dismissal without prejudice for the pro se plaintiff's failure to comply with the court's order to amend).[2]

Despite the Court's instructions and warning, Plaintiff's Amended Complaint suffers from the same deficiencies as his original Complaint. Plaintiff again improperly joins multiple, unrelated claims for alleged violations

---

[1] Zocaras v. Castro, 465 F.3d 479 (11th Cir. 2006).

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

that have no logical relationship. From what the Court can decipher, Plaintiff tries to allege claims premised on the ADA, deliberate indifference to conditions of confinement, retaliation, and sexual assault. See generally Doc. 8. But he "does not separate each cause of action or claim for relief into a different count" and he "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Barmapov v. Amuial, 986 F.3d 1321, 1325 (11th Cir. 2021) (internal quotations and citations omitted). Although Plaintiff may try to allege that these federal constitutional violations are a series of related events, the events on which he bases these claims have little factual overlap. Indeed, Plaintiff attempts to establish a relationship between his claims through vague and conclusory allegations of retaliation (largely based on other lawsuits unrelated to any named Defendant), which do not suffice. Plaintiff also fails to either separate each claim into different counts or specify the acts or omissions of each Defendant that allegedly violated his rights. Thus, he has not provided all Defendants with adequate notice of the claims against them. For these reasons, Plaintiff's Amended Complaint is due to be dismissed. See Smith v. Owens, 625 F. App'x 924, 928-29 (11th Cir. 2015) (affirming the district court's dismissal of the plaintiff's complaint against ten

8

corrections officers for unrelated excessive-force incidents for the plaintiff's noncompliance with Rule 20).

## II.   Failure to State a Claim

Alternatively, the Court finds that Plaintiff's Amended Complaint is due to be dismissed for failure to state a claim. The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915A(b). As for whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. Id. (quotations, alteration, and citation omitted). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe

9

v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

In reviewing a pro se plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). But the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017) (citing GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

The Amended Complaint is due to be dismissed pursuant to this Court's screening obligation. Insofar as Plaintiff sues the FDOC for monetary damages, state and governmental entities considered "arms of the state" are not "persons" subject to liability for purposes of a § 1983 action. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). The FDOC is an arm of the executive branch of the state government, see Fla. Stat. § 20.315, and thus is not a person subject to monetary damages under § 1983. See Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011) ("As the [F]DOC is a state agency, and thus not a person within the meaning of § 1983, Gardner's § 1983 claim for damages against the [F]DOC is frivolous.") (citing Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995)).

Also, to the extent Plaintiff attempts to raise a claim against FDOC under a theory of <u>respondeat superior</u>, § 1983 will generally not support such a claim. Instead, a government entity may be liable "only where the [government entity] itself causes the constitutional violation at issue." <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Notably, Plaintiff must establish that an FDOC official policy or custom was the "moving force" behind the alleged constitutional deprivation. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 693-94 (1978). The custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." <u>Craig</u>, 643 F.3d at 1310 (citation omitted). Here, Plaintiff fails to state a claim against FDOC because his allegations are isolated to him and are not based on any official FDOC practice or custom.

Likewise, if Plaintiff is trying to hold Defendants Allen and Lane liable based on the theory of <u>respondeat superior</u>, supervisory officials cannot be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). Instead, a supervisor can be liable only when that supervisor "personally participates in the alleged unconstitutional conduct or when there is a causal

11

connection" between the supervisor's actions and the constitutional deprivation. Id. Because Plaintiff does not allege that Allen and Lane personally participated in any unconstitutional conduct, the viability of his supervisory claims depend on whether he plausibly alleges a causal connection between Allen's and Lane's actions and the alleged constitutional deprivations.

Plaintiff may establish the requisite causal connection in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and failed to stop them from doing so." Id. (internal citations and quotation marks omitted).

Plaintiff does not allege facts establishing a causal connection. For instance, he does not allege a history of widespread abuse, nor does he allege that either Allen or Lane knew of a need to train their subordinates and failed to do so. Plaintiff also does not allege that his injuries stemmed from a custom or policy. Instead, he presents vague and conclusory allegations that Lane and Allen failed to "curb unconstitutional actions," which is insufficient to state a plausible claim for relief. Doc. 8 at 14.

Plaintiff also fails to state a plausible claim under the ADA. Notably, "[o]nly public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). To state a claim of discrimination under the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (quoting Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)).

Because only public entities may be liable under the ADA, Plaintiff fails to state an ADA claim against Defendants in their individual capacities. See Owens, 602 F. App'x at 478. Also, to the extent Plaintiff sues FDOC as a public entity under the ADA, he fails to state a plausible claim for relief because he does not allege he was denied a benefit or transferred to a non-ADA facility because of his disability. Rather, he alleges officials transferred him to Hamilton C.I. and denied him access to certain medical devices in retaliation for the lawsuits he filed.

13

Plaintiff also fails to allege a plausible retaliation claim against any Defendant. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Further, it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. Id. Three elements are involved in these retaliation claims:

> 1) [the inmate's] speech was constitutionally protected; 2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and 3) there is a causal relationship between the retaliatory action and the protected speech.

Smith, 532 F.3d at 1276. To establish the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the

14

defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit"). To establish subjective intent, a prisoner must provide more than conclusory assertions, possibly through a chronology of events that can be used to infer retaliatory intent. Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (per curiam) (finding conclusory allegations insufficient but officer's temporal reaction to a grievance and circumstantial evidence sufficient to state a claim). However, because prison officials' actions are presumed reasonable, an inmate must produce evidence to support "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." Crawford-El, 523 U.S. at 598.

Here, Plaintiff fails to sufficiently allege a causal connection between his protected speech (pending lawsuits) and the alleged retaliatory action (the February 9, 2024, transfer to Hamilton C.I). Indeed, the only lawsuit Plaintiff references is case no. 3:23-cv-895-WWB-PDB, which he filed on July 27, 2023,

15

more than six months before his transfer.³ Plaintiff does not allege that any named Defendant in this action is also a named defendant in case no. 3:23-cv-895-WWB-PDB. Instead, he simply alleges Defendant Jefferson was responsible for serving the defendants in that action. But that conclusory allegation alone is insufficient show Jefferson had a subjective motive to transfer Plaintiff to Hamilton C.I. in retaliation for that lawsuit. He asserts no other casual connection between the transfer and any other Defendants' actions and his general allegations amount to mere speculation unsupported by facts. Without more, Plaintiff's retaliation claim is merely conceivable, not plausible.

Plaintiff further fails to state a claim that his conditions of confinement at Hamilton C.I. violated the Eighth Amendment. To state such a claim, Plaintiff must allege that a defendant was deliberately indifferent to conditions that were "sufficiently serious." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004). Conditions of confinement are sufficiently serious under the Eighth Amendment only if they are so extreme that they expose the prisoner to "an

---

³ A Court may take judicial notice of its own records, and of public records within its own files. See Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239, 1243 (11th Cir.1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related cases); ITT Rayonier, Inc. v. United States, 651 F.2d 343, 347 n.2 (5th Cir. 1981) (court may take judicial notice of its own records or of those of inferior courts). Notably, "judicial notice may be taken only to establish what those documents contain, not the veracity of their contents." Id. (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271,1278 (11th Cir. 1999)).

16

unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions do not state an Eighth Amendment claim. Id.

While Plaintiff's allegation about being occasionally exposed to rats in his dormitory is disconcerting, it does not state a claim for an Eighth Amendment violation because it "fall[s] short of the 'extreme deprivations' necessary to properly state a claim for relief for unconstitutional conditions of confinement." See Adams v. Ivey, No. 2:19-CV-01063-LCB-JHE, 2021 WL 711482, at *5 (N.D. Ala. Feb. 1, 2021), report and recommendation adopted, 2021 WL 690082 (N.D. Ala. Feb. 23, 2021)[4]; see also Raines v. Caldwell, No. 2:17-CV-00974-RDP-JEO, 2018 WL 3371917, at *4 (N.D. Ala. June 8, 2018), report and recommendation adopted, 2018 WL 3368962 (N.D. Ala. July 10, 2018) ("The plaintiff's claim that spiders, flies, ants and other vermin entered his cell, without more, does not establish exposure to an inhumane condition of confinement. He does not allege any serious risk to his health."); Balcar v. Smith, No. 3:16-cv-P428-DJH, 2017 WL 380931, at *4 (W.D. Ky. Jan. 26, 2017) (noting that courts have generally

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

17

held that allegations about rat infestations alone are insufficient to state an Eighth Amendment claim); Brown v. Withrow, 985 F.2d 559 (6th Cir. 1993) (presence of rats, roaches, and ants in a cell is not below the constitutional standard).

Similarly, as to Plaintiff's allegation that Defendant Suarez refused his requests to shower, the Court notes that this is not the first time Plaintiff has attempted to raise this type of claim. See Harris v. Rosado, No. 3:23-cv-895-WWB-PDB, 2024 WL 2925756, at *2 (M.D. Fla. May 10, 2024), appeal dismissed, No. 24-11852, 2024 WL 4224027 (11th Cir. Sept. 18, 2024). In Harris, 2024 WL 2925756, at *2, Plaintiff argued that officials at Suwannee C.I. (none of whom are Defendants in this case) violated his Eighth Amendment rights by denying him an opportunity to shower for two weeks. The Court noted that while the deprivation of basic hygiene can violate the Eighth Amendment, that deprivation must be extreme, and repeated two-week periods without shower access do not amount to the type of extreme deprivation contemplated under the Eighth Amendment. Id. at *2 (citing Ellis v. Pierce Cnty., Ga., 415 F. App'x 215, 217 (11th Cir. 2011)). To that end, Plaintiff's current allegation that he was denied shower access during his eighteen-day stay at Hamilton C.I. also does not amount to the type of extreme deprivation needed to state an Eighth Amendment violation. Indeed, he neither alleges that it subjected him to an

unreasonable risk of serious damage to his future health or safety, nor that it amounted to a "wanton and unnecessary infliction of pain." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981).

Finally, to the extent Plaintiff attempts to raise a sexual assault claim, he fails to allege any facts providing context for that assault. And likely of more import, Plaintiff fails to allege any facts connecting any Defendant to that incident. For these reasons, this case is due to be dismissed without prejudice.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. This case is **DISMISSED without prejudice**.

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of November, 2024.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-7

C:   Richard Harris, #L24755

19